Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/05/2026 08:09 AM CDT

- 515 -

Nebraska Supreme Court Advance Sheets
321 Nebraska Reports
MLB ADVANCED MEDIA v. NEBRASKA DEPT. OF REV.
Cite as 321 Neb. 515

MLB Advanced Media, L.P., appellant and
cross-appellee, v. Nebraska Department of
Revenue and James Kamm, in his official
capacity as Nebraska Tax Commissioner,
appellees and cross-appellants.

___ N.W.3d ___

Filed June 5, 2026.    Nos. S-25-144, S-25-145.

1. **Statutes: Words and Phrases.** Terms undefined in the Nebraska Advantage Act have the same meaning as they do in the Nebraska Revenue Act of 1967.
2. **Jurisdiction: Appeal and Error.** A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent of the lower court's decision.
3. **Administrative Law: Judgments: Appeal and Error.** In an appeal under the Administrative Procedure Act, an appellate court may reverse, vacate, or modify the judgment of the district court for errors appearing on the record.
4. ____: ____: ____. When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.
5. **Administrative Law: Statutes: Appeal and Error.** The interpretation of statutes and regulations presents questions of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.
6. **Statutes: Legislature: Intent.** The fundamental objective of statutory interpretation is to ascertain and carry out the Legislature's intent.
7. **Statutes.** Statutory interpretation begins with the text, and the text is to be given its plain and ordinary meaning.

- 516 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
321 NEBRASKA REPORTS
MLB ADVANCED MEDIA v. NEBRASKA DEPT. OF REV.
Cite as 321 Neb. 515

8. ____. It is not within the province of a court to read a meaning into a statute that is not warranted by the language; neither is it within the province of a court to read anything plain, direct, or unambiguous out of a statute.

9. ____. To give effect to all parts of a statute, a court will attempt to reconcile different provisions so they are consistent, harmonious, and sensible and will avoid rejecting as superfluous or meaningless any word, clause, or sentence.

10. **Taxation.** If a taxpayer fails to meet the required levels of investment for the required period under a project covered by an agreement between the taxpayer and the Tax Commissioner pursuant to the Nebraska Advantage Act, all or a portion of the incentives set forth in the Nebraska Advantage Act shall be recaptured or disallowed.

11. ____. Except as specifically permitted in Neb. Rev. Stat. § 77-5728 (Reissue 2018), incentives allowed under the Nebraska Advantage Act are not transferable.

12. ____. Pursuant to the Nebraska Advantage Act, incentives previously allowed to a taxpayer and the future allowance of incentives under a project covered by an agreement between the taxpayer and the Tax Commissioner may be transferred where the covered project is transferred in its entirety by sale or lease to another taxpayer.

13. **Jurisdiction: Appeal and Error.** Where a lower court lacks jurisdiction to adjudicate the merits of a claim, issue, or question, an appellate court also lacks the power to determine the merits of the claim, issue, or question presented to the lower court.

14. **Statutes: Words and Phrases.** Technical words and phrases and such others as may have acquired a peculiar and appropriate meaning in the law shall be construed and understood according to such peculiar and appropriate meaning.

15. **Taxation: Words and Phrases.** As used in the first sentence of Neb. Rev. Stat. § 77-5726(4) (Cum. Supp. 2024), "determination" and "proposed determination" each mean a decision of the Tax Commissioner regarding compliance with the Nebraska Advantage Act.

16. **Taxation: Intent: Notice: Words and Phrases.** Where the Tax Commissioner has notified a taxpayer of an intent to deny a transfer request under the Nebraska Advantage Act and provided the taxpayer with an opportunity to respond, and then notifies the taxpayer that the transfer request is being denied, that notification is a "proposed determination" within the meaning of Neb. Rev. Stat. § 77-5726(4) (Cum. Supp. 2024).

- 517 -

Nebraska Supreme Court Advance Sheets
321 Nebraska Reports
MLB ADVANCED MEDIA v. NEBRASKA DEPT. OF REV.
Cite as 321 Neb. 515

17. **Administrative Law: Statutes.** Agency regulations properly adopted and filed with the Secretary of State of Nebraska have the effect of statutory law.
18. **Administrative Law: Taxation.** The mere filing of a tax form with the Nebraska Department of Revenue, unaccompanied by a request for hearing, does not create a contested case under the Administrative Procedure Act.
19. **Statutes.** Statutes pertaining to the same subject matter should be construed together; such statutes, being in pari materia, must be construed as if they were one law, and effect must be given to every provision.
20. **Statutes: Presumptions: Legislature: Intent.** In interpreting a statute, a court is guided by the presumption that the Legislature intended a sensible rather than absurd result in enacting the statute.

Appeals from the District Court for Lancaster County: Matthew O. Mellor, Judge. Judgment in No. S-25-144 affirmed as modified. Final order in No. S-25-145 affirmed.

Matthew R. Ottemann and Nicholas K. Niemann, of McGrath North Mullin & Kratz, P.C., L.L.O., for appellant.

Michael T. Hilgers, Attorney General, and Zachary B. Pohlman for appellees.

Funke, C.J., Cassel, Stacy, Papik, Freudenberg, Bergevin, and Vaughn, JJ.

Cassel, J.

## I. INTRODUCTION

Few areas are as dense and loaded with technical jargon as tax law. Here, a taxpayer disputed administrative actions imposing a recapture of tax incentives after denying a project's purported transfer and rejecting taxpayer challenges as untimely. Following judicial review under the Administrative Procedure Act,[1] two taxpayer appeals reached us. One (the transfer dispute) contests the dismissal, as untimely, of its attempted challenge of a denial of its transfer request. The other one (the deficiency dispute) challenges mailing of

---

[1] See Neb. Rev. Stat. §§ 84-901 to 84-920 (Reissue 2024 & Supp. 2025).

- 518 -

Nebraska Supreme Court Advance Sheets
321 Nebraska Reports
MLB ADVANCED MEDIA v. NEBRASKA DEPT. OF REV.
Cite as 321 Neb. 515

a deficiency notice via first-class mail without requesting a return receipt.

Because the taxpayer did not protest the transfer denial determination and did not seek judicial review until years later, we affirm the district court's dismissal for lack of jurisdiction in the transfer dispute appeal. In the deficiency dispute, we conclude that no return receipt was required when mailing the notice via first-class mail. Because there is no material dispute about the date of mailing the notice, we conclude the court erred in remanding the cause for a hearing on timeliness. Accordingly, we affirm as modified the judgment in the deficiency dispute.

## II. BACKGROUND

These consolidated appeals arise out of a project under the Nebraska Advantage Act[2] (Advantage Act). One appeal turns on the correct interpretation of a procedural statute in the Nebraska Revenue Act of 1967[3] (Revenue Act). In both appeals, the taxpayer is MLB Advanced Media, L.P. (MLB). The agency parties are the Nebraska Department of Revenue and James Kamm, in his official capacity as Nebraska Tax Commissioner (collectively the Department).

We begin by introducing the Advantage Act. Then we discuss relevant statutes under the Revenue Act. After having oriented the reader to important provisions under those acts, we set forth the factual background of the case before us, which involves a request to transfer an Advantage Act project, the denial of the request, the sending of a notice of deficiency, and the filing of a protest. Finally, we recount the Tax Commissioner's decisions and proceedings before the district court.

---

[2] Neb. Rev. Stat. §§ 77-5701 to 77-5735 (Reissue 2018, Cum. Supp. 2024 & Supp. 2025).

[3] Neb. Rev. Stat. §§ 77-2701 to 77-27,135.01, 77-27,222, 77-27,235, 77-27,236, and 77-27,238 to 77-27,242 (Reissue 2018, Cum. Supp. 2024 & Supp. 2025).

- 519 -

Nebraska Supreme Court Advance Sheets
321 Nebraska Reports
MLB ADVANCED MEDIA v. NEBRASKA DEPT. OF REV.
Cite as 321 Neb. 515

### 1. Advantage Act

The Advantage Act uses tax incentives to encourage businesses to relocate to or expand within Nebraska.[4] It promotes the creation of "quality" jobs related to research and development, manufacturing, and large data centers.[5] The Advantage Act contains definitional statutes to be used.[6]

[1] The Advantage Act does not define every term but instead incorporates other definitions. It specifically provides that "[a]ny term shall have the same meaning as used in Chapter 77, article 27."[7] Article 27 of chapter 77 includes the Revenue Act. Thus, terms undefined in the Advantage Act have the same meaning as they do in the Revenue Act.

In order to obtain the Advantage Act's incentives, a taxpayer must file an application requesting an agreement with the Tax Commissioner.[8] After approval of the application, the taxpayer and Tax Commissioner enter into a written agreement.[9] The agreement sets forth such matters as the levels of employment and investment required by the act for the project and the period during which the required levels must be met.[10]

The Advantage Act provides that an applicant may qualify for benefits in one of six tiers.[11] The tiers differ based on investment in qualified property and hiring of new employees.[12] When the taxpayer has met the required levels of employment and investment, the taxpayer is entitled to incentives.[13]

---

[4] § 77-5702.

[5] § 77-5702(3).

[6] See § 77-5703.

[7] § 77-5704.

[8] § 77-5723(1).

[9] § 77-5723(6).

[10] *Id*.

[11] § 77-5725(1).

[12] *Id*.

[13] § 77-5725(2).

- 520 -

Nebraska Supreme Court Advance Sheets
321 Nebraska Reports
MLB ADVANCED MEDIA v. NEBRASKA DEPT. OF REV.
Cite as 321 Neb. 515

Incentives include a refund of sales and use taxes,[14] a credit,[15] and an exemption of certain property used in connection with a project.[16]

If a taxpayer fails to meet the required levels of employment or investment for the project for the required period, all or a portion of the incentives set forth in the Advantage Act shall be recaptured or disallowed.[17]

More relevant here, the Advantage Act limits the situations in which its incentives are transferable.[18] Past and future allowance of incentives may be transferred "when a project covered by an agreement is transferred *in its entirety* by sale or lease to another taxpayer or in an acquisition of assets qualifying under [a federal tax law not applicable here]."[19]

We set forth the complete subsection of the Advantage Act addressing the procedures applicable to failures to comply, as follows:

> A *determination* that a taxpayer is not engaged in a qualified business or has failed to meet or maintain the required levels of employment or investment for incentives, exemptions, or recapture *may be protested within sixty days after the mailing of the written notice of the proposed determination. If the notice of proposed determination is not protested within the sixty-day period, the proposed determination is a final determination.* If the notice is protested, the Tax Commissioner shall issue a written order resolving such protests. The written order of the Tax Commissioner resolving a protest may be

---

[14] § 77-5725(2)(a) and (b).

[15] § 77-5725(3) through (5).

[16] § 77-5725(8).

[17] § 77-5727.

[18] § 77-5728(1).

[19] § 77-5728(1)(b) (emphasis supplied).

- 521 -

Nebraska Supreme Court Advance Sheets
321 Nebraska Reports
MLB ADVANCED MEDIA v. NEBRASKA DEPT. OF REV.
Cite as 321 Neb. 515

appealed to the district court of Lancaster County within thirty days after the issuance of the order.[20]

The Advantage Act does not specifically mention "service" or address any method of mailing the notice. Thus, as did the parties and the district court, we look to the Revenue Act.

## 2. Revenue Act

The Revenue Act contains numerous subparts, but we narrow our discussion to the subparts addressing sales and use tax[21] and general provisions.[22] In the former subpart, one finds the terms "determine," "determination," and "deficiency determination."[23] In the latter, a method-of-mailing statute[24] appears.

The "determination" provision authorizes the Tax Commissioner to specify an amount due under the tax law.[25] If the Tax Commissioner is not satisfied with the return of the tax or the amount of tax required to be paid to the state by any person, the Tax Commissioner may "determine" the amount required to be paid.[26] This statute also empowers the Tax Commissioner, by means of a "deficiency determination," to determine if an insufficient amount has been paid.[27]

A person against whom a deficiency determination is made "may petition for a redetermination within sixty days after service upon the person of notice thereof."[28] If no petition for redetermination is filed within that 60-day period, "the

---

[20] § 77-5726(4) (emphasis supplied).

[21] §§ 77-2703 to 77-2713.

[22] §§ 77-27,125 to 77-27,135.01.

[23] § 77-2709(1).

[24] § 77-27,135.

[25] § 77-2709(1).

[26] *Id.*

[27] *Id.*

[28] § 77-2709(7).

- 522 -

Nebraska Supreme Court Advance Sheets
321 Nebraska Reports
MLB ADVANCED MEDIA v. NEBRASKA DEPT. OF REV.
Cite as 321 Neb. 515

determination becomes final at the expiration of the period."[29] But if a petition for redetermination is timely filed, the Tax Commissioner must reconsider the determination and grant an oral hearing if the petition requested a hearing.[30] The Tax Commissioner's decision upon a petition for redetermination becomes final 30 days after the petitioner is served notice of the decision.[31] But "[a]ny final action of the Tax Commissioner may be appealed, and the appeal shall be in accordance with the Administrative Procedure Act."[32]

The Tax Commissioner must notify the taxpayer of a recapture determination or a deficiency determination. The Advantage Act contemplates that written notice of a proposed determination of recapture will be mailed to a taxpayer and that if the notice of proposed determination is not protested within 60 days of the mailing, the determination becomes "final."[33] Under the Revenue Act, if the Tax Commissioner makes a deficiency determination, he or she shall give "written notice" of the determination.[34] If the notice is served by mail, "the service is complete at the time of deposit in the United States post office."[35]

This leads us to the Revenue Act statute at the heart of the controversy, which specifies the method of mailing notice. At the relevant time, this statute stated, "Whenever any notice required to be given by the Tax Commissioner under the provisions of the [Revenue Act] may be given by mail, it shall be given by *first-class, registered, or certified mail, return*

_____

[29] *Id.*

[30] § 77-2709(8).

[31] § 77-2709(10).

[32] § 77-27,127.

[33] See § 77-5726(4).

[34] § 77-2709(5)(a).

[35] § 77-2709(5)(b).

- 523 -

Nebraska Supreme Court Advance Sheets
321 Nebraska Reports
MLB ADVANCED MEDIA v. NEBRASKA DEPT. OF REV.
Cite as 321 Neb. 515

*receipt requested*."[36] This statute has since been amended,[37] but the pertinent mailings occurred prior to that amendment. Throughout this opinion, we refer to the version of the statute in effect in 2021, unless otherwise noted.

### 3. PROJECT AND TRANSFER REQUEST

MLB and the Tax Commissioner entered into an agreement under § 77-5725(1)(e) of the Advantage Act concerning a "[t]ier 5" data center project. It required MLB to invest a minimum of $37 million. In return, MLB would be entitled to a refund of the sales and use taxes paid on purchases or leases for use at the project.

MLB later sought to transfer its project and the corresponding incentives to BAMTech, LLC. MLB filed a tax form with the schedule to be used for any changes to a project under the Advantage Act. A checkmark on the schedule indicated that MLB "sold [the project] in its entirety" to BAMTech. A letter from BAMTech reported that it agreed to "take on the project."

Correspondence ensued. By a letter dated September 16, 2019, the Tax Commissioner informed MLB of an "intent to deny [MLB's] request to transfer MLB['s] project to BAMTech." The letter stated that MLB had failed to respond to the Department's repeated requests for information related to the disposition of project assets—information which, the letter stated, the Department needed in order to verify transfer of the entirety of the project. Shortly thereafter, MLB responded, explaining that some servers and hardware were not transferred to BAMTech, but that those assets "were retired by MLB[] as shown on the [tax form]." No protest was filed within 60 days after the September 16 letter. The parties instead focus on communications in February and March 2021.

---

[36] § 77-27,135 (Reissue 2018) (emphasis supplied).

[37] See 2024 Neb. Laws, L.B. 146, § 2.

- 524 -

Nebraska Supreme Court Advance Sheets
321 Nebraska Reports
MLB ADVANCED MEDIA v. NEBRASKA DEPT. OF REV.
Cite as 321 Neb. 515

On February 24, 2021, the Tax Commissioner informed MLB by letter that the Department "has denied your request to transfer MLB['s] project to BAMTech." This letter stated, "The reasons for this denial were outlined in the [September 2019] letter which was previously sent to you . . . ." It explained, "Your request to transfer the project is denied because the project was not transferred in its entirety . . . ."

The February 2021 letter also informed MLB of the consequences of the Department's denial of the transfer request. It stated:

> Due to the denial of the request for the project to be transferred, MLB remains the project owner. As the project owner, MLB has failed to maintain the required investment and employment levels beginning on September 25, 2017. As required by Neb. Rev. Stat. §77-5727(2), [the Department] will subsequently issue a Notice of Deficiency Determination to recapture a portion of the benefits MLB has received under this program. MLB will have the opportunity to protest the Notice of Deficiency Determination within 60 days of receipt of that notice.

No protest was filed within 60 days after the February 2021 letter.

### 4. Notice of Deficiency Determination

The Tax Commissioner issued MLB a "Notice of Deficiency Determination" (the notice) dated March 10, 2021. The notice was sent via first-class mail. No return receipt was requested. The Department's internal "Audit Case Management" and "Taxpayer Case Management" systems both showed that the notice was mailed on March 10.

The notice stated that the project was in recapture and that MLB must repay Nebraska sales and use tax and interest totaling nearly $2.5 million. The notice explained:

> On or about September 25, 2017, a portion of the investment at the project was sold to another entity outside

- 525 -

Nebraska Supreme Court Advance Sheets
321 Nebraska Reports
MLB ADVANCED MEDIA v. NEBRASKA DEPT. OF REV.
Cite as 321 Neb. 515

the unitary group. As stated in [the Department's] letter dated February 24, 2021 (copy enclosed), the project cannot be transferred to the purchaser of the other property because the project was not sold in it's [sic] entirely [sic]. The request to transfer the project was denied. Thus, the investment levels reported by MLB . . . would determine whether the project maintained levels.

According to the notice, MLB's tax form for 2017 reported investment of less than $37 million. Further, MLB did not file tax forms for 2018 and 2019, and its return for 2019 was marked as a final return.

The notice informed MLB of its options to send payment or to file a protest. It stated: "[A] petition for redetermination (protest) may be filed with [the Department by mail or by filing electronically]. This determination becomes final and cannot be reconsidered by the Tax Commissioner unless a protest is properly filed within sixty days from the postmark date of this notice." The record is silent regarding the postmark date.

### 5. Protest and Nonacceptance

On May 28, 2021—79 days after March 10—MLB electronically submitted a petition for redetermination, i.e., a protest. MLB stated that it was protesting all aspects of the notice, including the denial of the project's transfer. MLB also asserted that "the Notice was not valid and was not properly issued by the Department, was not issued within the time required by law, and is therefore void *ab initio.*" MLB requested "an informal conference and a formal administrative hearing before the Department." It further stated, "Notwithstanding that the Department may contend that this petition should be denied based on a contention that the 60-day filing date was not met, a hearing is still required under Nebraska case law."

Thereafter, the Tax Commissioner informed MLB by letter that the Department "does not accept the filing of your Petition for Redetermination . . . dated May 28, 2021, as it

- 526 -

Nebraska Supreme Court Advance Sheets
321 Nebraska Reports
MLB ADVANCED MEDIA v. NEBRASKA DEPT. OF REV.
Cite as 321 Neb. 515

was not timely filed." The nonacceptance letter stated that the Department had "issued a final determination that the project was not duly transferred in its entirety" and that "MLB did not file an appeal with the district court within 30 days of the February 24, 2021 final determination lettter [sic]." The nonacceptance letter advised MLB to submit any additional evidence related to the filing of its protest and to provide a copy of the envelope if MLB asserted that the Department mailed the notice on a date other than March 10, 2021. MLB responded, but it did not assert a mailing date other than March 10. Instead, it challenged the lack of a hearing and the Tax Commissioner's interpretation that a return receipt was not needed when mailing by first-class mail.

In April 2024, the Tax Commissioner again notified MLB by letter that the Department did not accept the protest because it was not timely filed. The correspondence further stated that "[t]his letter is a final action of the Tax Commissioner" and that the Department "is not required to hold a hearing before making this determination." The letter noted that MLB had not provided any evidence to dispute the date the notice was mailed. It also stated that in the February 2021 letter, the Department had "ma[de] a final determination that the project was not duly transferred in its entirety."

## 6. Petitions for Review

Twenty-nine days later, MLB filed two petitions for review under the Administrative Procedure Act. Both were filed in the district court for Lancaster County.

One, the transfer dispute, challenged the Tax Commissioner's denial of MLB's request to transfer the project to BAMTech. It asserted that the failure to provide MLB with a hearing violated due process, the Department's regulations, and the Administrative Procedure Act.

The other, the deficiency dispute, addressed the notice. It set forth seven bases for relief, including that MLB was not

- 527 -

Nebraska Supreme Court Advance Sheets
321 Nebraska Reports
MLB ADVANCED MEDIA v. NEBRASKA DEPT. OF REV.
Cite as 321 Neb. 515

properly served, that it was error to deny the petition without a hearing, and that the notice was void ab initio.

### 7. District Court's Decisions

In the transfer dispute, the court entered an "Order of Dismissal." The order stated that MLB was purporting to appeal from the denial of its transfer request in February 2021 and that assuming the February 2021 decision was appealable, MLB did not timely appeal. Accordingly, the court dismissed the petition for review for lack of jurisdiction.

In the deficiency dispute, the court entered a "Judgment on Petition for Judicial Review." First, the court engaged in statutory interpretation on the issue of whether § 77-27,135 required a return receipt for notices sent by first-class mail and determined that "'return receipt requested' does not modify 'first-class . . . mail.'" Thus, the court concluded that the Department could serve MLB with the notice by sending it via first-class mail without a return receipt.

Then, the court turned to MLB's arguments that it had a right to a hearing. The court stated that no statute or regulation specifically gave taxpayers the right to a hearing on the timeliness of their protests or petitions for redetermination and that "the answer depends on whether due process requires a hearing." Ultimately, the court concluded that due process entitled MLB to a hearing on the timeliness of its protest. The court emphasized that its holding was limited to the facts of this case—where the taxpayer specifically alleged that its protest was timely and specifically requested a hearing on the timeliness of its petition.

The court did not reach MLB's argument that the notice was void ab initio. It stated that it could not do so until the threshold jurisdictional issue of the timeliness of MLB's petition was resolved.

The court remanded the cause to the Department for further proceedings. It ordered the Department to hold a hearing limited to whether MLB timely protested the notice.

### 8. Appeals

MLB filed an appeal in each case. The deficiency dispute was docketed as case No. A-25-144, and the transfer dispute was docketed as case No. A-25-145. After the appeals were consolidated for briefing and oral argument, we moved them to our docket.[38] Despite the docketing order, we address the transfer dispute first, as it presents a question of jurisdiction.

## III. ASSIGNMENTS OF ERROR

In the transfer dispute, MLB assigns, reordered, that the court erred in (1) failing to find that the Department had not issued a final determination on the transfer request, (2) determining that it lacked jurisdiction because MLB's appeal was untimely, and (3) failing to remand the transfer request back to the Department for a hearing.

In the deficiency dispute, MLB alleges that the court erred in (1) finding that the Department's service of the deficiency notice complied with § 77-27,135, (2) failing to find that the Department did not acquire personal jurisdiction over MLB when MLB was not properly served, (3) failing to find that the notice was void because it was not properly served on MLB, (4) failing to find that the notice was void because it was based on a transfer request that had not been actually denied, and (5) limiting its remand to timeliness of the May 2021 petition.

On cross-appeal in the deficiency dispute, the Department assigns that because the record reveals no dispute of any material jurisdictional fact, the court erred in remanding the deficiency dispute for a hearing.

## IV. STANDARD OF REVIEW

[2] A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent of the lower court's decision.[39]

---

[38] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2024).

[39] *Hauxwell v. Middle Republican NRD*, 319 Neb. 28, 21 N.W.3d 21 (2025).

- 529 -

Nebraska Supreme Court Advance Sheets
321 Nebraska Reports
MLB ADVANCED MEDIA v. NEBRASKA DEPT. OF REV.
Cite as 321 Neb. 515

[3,4] In an appeal under the Administrative Procedure Act, an appellate court may reverse, vacate, or modify the judgment of the district court for errors appearing on the record.[40] When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[41]

[5] The interpretation of statutes and regulations presents questions of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.[42]

## V. ANALYSIS

### 1. Basic Principles of Advantage Act

On two previous occasions, this court has considered the Advantage Act.[43] The appeals now before us present novel issues related to the denial of a transfer request and the method of mailing a notice of deficiency. We have already provided an overview. From the Advantage Act and the Revenue Act, we derive principles of law applicable to the tax incentives at issue here.

[6-8] To do so, we apply well-settled principles of statutory interpretation. The fundamental objective of statutory interpretation is to ascertain and carry out the Legislature's intent.[44] Statutory interpretation begins with the text, and the

---

[40] *Precision Castparts Corp. v. Nebraska Dept. of Rev.*, 317 Neb. 481, 10 N.W.3d 707 (2024).

[41] *Id.*

[42] *Ash Grove Cement Co. v. Nebraska Dept. of Rev.*, 306 Neb. 947, 947 N.W.2d 731 (2020).

[43] See, *id.*; *Archer Daniels Midland Co. v. State*, 290 Neb. 780, 861 N.W.2d 733 (2015).

[44] *Flinn v. Strode*, 320 Neb. 813, 30 N.W.3d 661 (2026).

- 530 -

Nebraska Supreme Court Advance Sheets
321 Nebraska Reports
MLB ADVANCED MEDIA v. NEBRASKA DEPT. OF REV.
Cite as 321 Neb. 515

text is to be given its plain and ordinary meaning.[45] It is not within the province of a court to read a meaning into a statute that is not warranted by the language; neither is it within the province of a court to read anything plain, direct, or unambiguous out of a statute.[46]

[9] Another principle is sometimes referred to as the canon against superfluity. To give effect to all parts of a statute, a court will attempt to reconcile different provisions so they are consistent, harmonious, and sensible and will avoid rejecting as superfluous or meaningless any word, clause, or sentence.[47]

[10-12] Using those interpretive principles, we set forth four Advantage Act rules—one governing recaptures and three addressing transfers of incentives. If a taxpayer fails to meet the required levels of investment for the required period under a project covered by an agreement between the taxpayer and the Tax Commissioner pursuant to the Advantage Act, all or a portion of the incentives set forth in the Advantage Act must be recaptured or disallowed.[48] Except as specifically permitted in § 77-5728, incentives allowed under the Advantage Act are not transferable. Pursuant to the Advantage Act, incentives previously allowed to a taxpayer and the future allowance of incentives, under a project covered by an agreement between the taxpayer and the Tax Commissioner, may be transferred where the covered project is transferred in its entirety by sale or lease to another taxpayer.[49]

"Entirety" is not specifically defined by either the Advantage Act or the Revenue Act. The plain and ordinary meaning of "entirety" is "the state of being entire or complete."[50] In turn,

---

[45] *Id.*

[46] *Id.*

[47] *Id.*

[48] See §§ 77-5723(6) and 77-5727.

[49] See §§ 77-5723(6) and 77-5728(1)(b).

[50] Merriam-Webster's Collegiate Dictionary 417 (11th ed. 2020).

- 531 -

Nebraska Supreme Court Advance Sheets
321 Nebraska Reports
MLB ADVANCED MEDIA v. NEBRASKA DEPT. OF REV.
Cite as 321 Neb. 515

"entire" means "having no element or part left out."[51] As used in § 77-5728(1)(b), "entirety" means the whole of a project, including all of its component parts.

These principles underlie enforcement of project requirements and transfers. Other statutes more directly govern the respective disputes.

## 2. Transfer Dispute

[13] Because the transfer dispute was dismissed for lack of jurisdiction, we address it first. The district court determined that it lacked jurisdiction because MLB filed the petition for review too late. Where a lower court lacks jurisdiction to adjudicate the merits of a claim, issue, or question, an appellate court also lacks the power to determine the merits of the claim, issue, or question presented to the lower court.[52]

MLB advances four reasons to support its contention that the February 2021 letter was not a final determination regarding MLB's transfer request. First, it argues that treating it as such would have deprived MLB of due process by denying a hearing. Second, by denying a hearing, it would have violated the Administrative Procedure Act. Third, it would have violated § 77-5726(4). Finally, it would have violated the Department's regulations. We are not persuaded.

MLB points to the correct statute, but we disagree with MLB's interpretation. We quoted § 77-5726(4) in full above. Now we concentrate on the first two sentences, which apply here. In doing so, we rely upon another principle of statutory interpretation.

[14] A statute addresses "technical words and phrases."[53] Thus, we have said that technical words and phrases and such others as may have acquired a peculiar and appropriate meaning in the law shall be construed and understood according to

---

[51] *Id.*

[52] *Johnson v. Village of Polk*, 319 Neb. 352, 23 N.W.3d 96 (2025).

[53] Neb. Rev. Stat. § 49-802(5) (Reissue 2021).

- 532 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
321 NEBRASKA REPORTS
MLB ADVANCED MEDIA v. NEBRASKA DEPT. OF REV.
Cite as 321 Neb. 515

such peculiar and appropriate meaning.[54] The two sentences here use such words, drawn from the Revenue Act.

The first sentence uses technical words to establish a deadline for filing a protest. It states, "A *determination* that a taxpayer . . . has failed to . . . maintain the required levels of . . . investment for incentives, exemptions, or recapture may be *protested* within sixty days after the mailing of the written notice of the *proposed determination*."[55]

The second sentence likewise uses technical terminology to specify the consequence of a failure to protest. It reads, "If the notice of *proposed determination* is not protested within the sixty-day period, the proposed determination is a *final determination*."[56]

The final two sentences of § 77-5726(4) apply only where a protest is timely filed. MLB does not dispute that no protest was filed within 60 days of the February 2021 letter.

Context matters. The September 2019 letter advised MLB of the Department's "intent to deny" MLB's request to transfer the project. That letter afforded an opportunity to submit contrary evidence. Although MLB attempted to persuade the Department that it had transferred the project's entirety, it failed in that effort. The Department's February 2021 letter reiterated its view of the facts and the resulting effects.

[15,16] The first sentence of § 77-5726(4) equates "determination" with "proposed determination." In other words, as used in the first sentence of § 77-5726(4), "determination" and "proposed determination" mean the same thing—a decision of the Tax Commissioner regarding compliance with the Advantage Act. Where the Tax Commissioner has notified a taxpayer of an intent to deny a transfer request under the Advantage Act and provided the taxpayer with an opportunity to respond, and then notifies the taxpayer that the transfer

---

[54] *Precision Castparts Corp. v. Nebraska Dept. of Rev., supra* note 40.

[55] § 77-5726(4) (emphasis supplied).

[56] *Id*. (emphasis supplied).

- 533 -

Nebraska Supreme Court Advance Sheets
321 Nebraska Reports
MLB ADVANCED MEDIA v. NEBRASKA DEPT. OF REV.
Cite as 321 Neb. 515

request is being denied, that notification is a "proposed determination" within the meaning of § 77-5726(4). It follows that the Department's February 2021 letter was a "determination" or "proposed determination" within the meaning of § 77-5726(4).

That leads to inescapable consequences. A proposed determination was mailed on February 24, 2021. Because the 60th day thereafter fell on a Sunday, the last day to file a protest was Monday, April 26, 2021. MLB did not do so. Thus, the determination then became a "final determination."[57] MLB did not file a petition for review in the district court until 2024, long after expiration of the time for filing such.[58] The district court correctly determined that it lacked jurisdiction of the petition for review in the transfer dispute.

MLB's other arguments require little discussion. Its arguments regarding due process, the Administrative Procedure Act, and the Department's regulations are all premised on the denial of a hearing. But MLB had the opportunity for a hearing by means of filing a protest. It did not do so.

[17] The Department's regulations generally require that a hearing be requested.[59] The regulations do not define "protest," but they use the term "protest petition"[60] and define "[p]etition" as

> the initial document filed with the Department that sets forth a request for action, including:
>
>> 001.02M(1) A written request for redetermination of a notice of proposed deficiency determination issued by the Department *that includes a request for hearing*;

---

[57] See § 77-5726(4).

[58] See, § 84-917(2)(a)(i); *Ahmann v. Correctional Ctr. Lincoln*, 276 Neb. 590, 755 N.W.2d 608 (2008).

[59] See, e.g., 316 Neb. Admin. Code, ch. 33, §§ 001.02M, 002.01A(5), 002.03, 002.04, 003.01A(6), 003.02A(6), 003.05, 004.05A, 004.08, and 005.01 (2014).

[60] *Id.*, §§ 003.06, 011.03A(2)(a), and 013.01C.

- 534 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
321 NEBRASKA REPORTS
MLB ADVANCED MEDIA v. NEBRASKA DEPT. OF REV.
Cite as 321 Neb. 515

001.02M(2) A written request for a redetermination of a disapproved application *that includes a request for hearing*;

001.02M(3) *A written request for a hearing* regarding any action initiated by the Department under section 33-004 of these regulations;

001.02M(4) A written request to intervene in a contested case.[61]

Agency regulations properly adopted and filed with the Secretary of State of Nebraska have the effect of statutory law.[62] For that reason, MLB was on notice of the requirement that an administrative hearing be requested. By failing to file a timely protest, it forfeited its right to a hearing.

Nonetheless, MLB contends that it was entitled to a hearing because its transfer request, without a request for hearing, created a contested case. We disagree.

[18] MLB's contention is refuted by the Department's regulations. They provide that "[c]ontested [c]ase means a proceeding before the Department in which the legal rights, duties, or privileges of specific parties are required by law or constitutional right to be determined after a hearing before the Department."[63] They also specify how a contested case is initiated: "A contested case begins with the filing of a petition or claim and request for hearing, if applicable, with the Department. The petition or claim is the initial document filed by or with the Department that sets forth a request for Department action."[64] The mere filing of a tax form with the Department, unaccompanied by a request for hearing, does not create a contested case under the Administrative Procedure Act.

---

[61] *Id.*, § 001.02M (emphasis supplied).

[62] See *Becton, Dickinson & Co. v. Nebraska Dept. of Rev.*, 276 Neb. 640, 756 N.W.2d 280 (2008).

[63] 316 Neb. Admin. Code, *supra* note 59, § 001.02D.

[64] *Id.*, § 005.01.

- 535 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
321 NEBRASKA REPORTS
MLB ADVANCED MEDIA v. NEBRASKA DEPT. OF REV.
Cite as 321 Neb. 515

MLB's assignments of error in the transfer dispute lack merit. The district court's order dismissing that petition for review must be affirmed.

### 3. DEFICIENCY DISPUTE

Our discussion of the deficiency dispute encompasses three divisions. We start by addressing MLB's first three assignments of error, which turn upon whether the method-of-notice statute[65] permits notice by first-class mail without requesting a return receipt. Then, we observe that our disposition of the transfer dispute forecloses MLB's fourth assignment. Finally, we consider MLB's last assignment—asserting that the district court's remand was insufficient—and the Department's cross-appeal—contending that the court erred in making any remand.

### (a) Not Required to Request Return Receipt for Notice Sent First-Class Mail

The foremost issue in the deficiency dispute is whether the Department's March 2021 notice, sent via first-class mail, required a return receipt. The parties focus on the language of § 77-27,135 then in effect stating that notice by mail "shall be given by first-class, registered, or certified mail, return receipt requested." MLB contends that "return receipt requested" modifies "first-class," but the Department disagrees.

We digress to observe that there is no real dispute that MLB received the mailed notice. The Department requested a copy of the envelope bearing the postmark, but MLB did not produce it. Nor did MLB represent that the envelope could not be produced. MLB made no assertions that the postmark date was different from March 10, 2021. And at oral argument, MLB conceded that the notice was sent via first-class mail. Thus, MLB presents a purely technical argument.

The statutory terms here are technical terms used by the U.S. Postal Service (USPS). Based on the text of § 77-27,135,

---

[65] See § 77-27,135.

- 536 -

Nebraska Supreme Court Advance Sheets
321 Nebraska Reports
MLB ADVANCED MEDIA v. NEBRASKA DEPT. OF REV.
Cite as 321 Neb. 515

we believe the Legislature intended the terms to be interpreted based on USPS meanings. The USPS' Domestic Mail Manual (DMM)[66] has been incorporated by reference into the Code of Federal Regulations[67] and has the force of law. As we have done previously,[68] we take judicial notice of the DMM. We refer to the version of the DMM in effect when the Legislature added the relevant language via 2012 Neb. Laws, L.B. 727.[69]

Four bases persuade us that the Department is correct: the in pari materia principle, the canon against superfluity, the application of technical terms, and ultimately, our perception of the Legislature's intent. We also touch on the last-antecedent rule.

[19] Although we have recited numerous principles of statutory interpretation, one more applies at this point. Statutes pertaining to the same subject matter should be construed together; such statutes, being in pari materia, must be construed as if they were one law, and effect must be given to every provision.[70]

The version of § 77-27,135 at issue here was part of a comprehensive revision of statutes.[71] Many of the statutes were amended to substitute "mail," "mails," "mailed," or "mailing" for more specific designations.[72] The most common aspect, including statutes that would not have been subject to

---

[66] See Mailing Standards of the United States Postal Service, Domestic Mail Manual (2026), https://pe.usps.com/text/dmm300/welcome.htm (last visited May 28, 2026).

[67] See 39 C.F.R. § 111.1(a) (2025).

[68] See *Lozier Corp. v. Douglas Cty. Bd. of Equal.*, 285 Neb. 705, 829 N.W.2d 652 (2013).

[69] See DMM (2012), https://pe.usps.com/archive/html/dmmarchive20120122/dmm300_landing.htm (last visited May 28, 2026).

[70] *Flinn v. Strode, supra* note 44.

[71] See 2012 Neb. Laws, L.B. 727.

[72] See *id.*, §§ 1 through 15, 23, 27, 28, 30 through 33, and 40 through 52.

- 537 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
321 NEBRASKA REPORTS
MLB ADVANCED MEDIA v. NEBRASKA DEPT. OF REV.
Cite as 321 Neb. 515

§ 77-27,135, was to remove specific references to certified or registered mail. This demonstrates the legislative intent to move away from a mandate of registered or certified mail.

The canon against superfluity (recited in the transfer dispute section above) also supports the Department's reading. Before the 2012 amendment, § 77-27,135 (Reissue 2009) stated that notice shall be given "by either registered or certified mail, return receipt requested, and not otherwise." MLB's reading not only gives no practical effect to the addition of first-class mail; it also ascribes no meaning to the deletion of the words "and not otherwise."[73] In our view, however, the deletion of those words demonstrates an intent to expand, in a meaningful way, the permissible means of giving notice.

We turn briefly to the technical words employed by the USPS (rivaling tax law in density and jargon). The DMM then in effect showed that retail mail could be sent by five different mail services—express mail, priority mail, first-class mail, parcel post, or media mail and library mail.[74]

"First-Class Mail (including Priority Mail) [was] the only class of mail eligible to receive the following extra services: Registered Mail service and Certified Mail service."[75] Registered mail and certified mail were extra services that provided a sender with "a mailing receipt and, upon request, electronic verification that an article was delivered or that a delivery attempt was made."[76]

Return receipt service was available for first-class mail only "when purchased at the time of mailing with Certified Mail, COD, insured mail (for more than $200.00), or Registered

---

[73] See § 77-27,135 (Reissue 2018).

[74] See DMM, supra note 69, § 100 et seq., https://pe.usps.com/archive/html/dmmarchive20120122/100_tab.htm.

[75] See id., § 133.2.2.4, https://pe.usps.com/archive/html/dmmarchive20120122/133.htm#1041530.

[76] See id., §§ 503.2.2.1 and 503.3.2.1, https://pe.usps.com/archive/html/dmmarchive20120122/503.htm.

- 538 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
321 NEBRASKA REPORTS
MLB ADVANCED MEDIA v. NEBRASKA DEPT. OF REV.
Cite as 321 Neb. 515

Mail service."[77] Thus, based on the DMM, a sender at that time could not request a return receipt for an item sent by first-class mail unless the sender added an additional service, such as registered mail or certified mail. While a sender could obtain return receipt service with "COD" (i.e., collect on delivery) mail or with mail insured for more than $200,[78] those services would be entirely illogical for mailing a tax deficiency notice.

Because a sender cannot request a return receipt for first-class mail without paying for extra services—such as registered or certified mail—an option to send notice via "first-class" mail would be superfluous. The parties have not directed us to, nor have we uncovered, any current statute in Nebraska specifying "first-class mail, return receipt requested."

[20] Ultimately, our interpretation is based upon our perception of the Legislature's intent. In interpreting a statute, a court is guided by the presumption that the Legislature intended a sensible rather than absurd result in enacting the statute.[79] MLB contends that the language of § 77-27,135—"by first-class, registered, or certified mail, return receipt requested"—means that all notices must be mailed with a return receipt requested. However, it would be senseless for the Legislature to require a sender to request a return receipt for first-class mail, when that cannot be done without paying for an extra service.

In order for a court to inquire into a statute's legislative history, the statute in question must be open to construction, and a statute is open to construction when its terms require interpretation or may reasonably be considered ambiguous.[80]

---

[77] See *id.*, § 503.6.2.2.b.

[78] See *id.*

[79] *Wisner v. Vandelay Investments*, 300 Neb. 825, 916 N.W.2d 698 (2018) (superseded by statute on other grounds as stated in *Castillo v. Libert Land Holdings 4*, 316 Neb. 287, 4 N.W.3d 377 (2024)).

[80] *Amorak v. Cherry Cty. Bd. of Comrs.*, 318 Neb. 723, 18 N.W.3d 782 (2025).

- 539 -

Nebraska Supreme Court Advance Sheets
321 Nebraska Reports
MLB ADVANCED MEDIA v. NEBRASKA DEPT. OF REV.
Cite as 321 Neb. 515

A statute is ambiguous if it is susceptible of more than one reasonable interpretation, meaning that a court could reasonably interpret the statute either way; otherwise, the statute is unambiguous.[81] But we do not read this statutory language as having more than one reasonable interpretation. Although we do not rely on legislative history, in the interest of thoroughness, we recognize that it supports the Department's position.[82]

For the sake of completeness, we note that both parties cite the last-antecedent rule. "The last antecedent is 'the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence.'"[83] The last-antecedent rule provides that "[r]eferential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent."[84] Thus, the Department argues that in § 77-27,135, "return receipt requested" modifies only "certified mail." MLB, on the other hand, relies on a treatise's explanation that "[a] qualifying phrase separated from antecedents by a comma is evidence that the qualifier is supposed to apply to all the antecedents instead of only to the immediately preceding one."[85] Based on comma placement, MLB contends that "return receipt requested" in § 77-27,135 applies to first-class mail, registered mail, and certified mail. But a review of Nebraska statutes shows that even when "certified mail" is the only type of mail service referred to,

---

[81] *Dirt Road Development v. Hirschman*, 316 Neb. 757, 7 N.W.3d 438 (2024).

[82] See, Committee Statement, L.B. 727, Revenue Committee, 102d Leg., 2d Sess. (Jan. 18, 2012); Revenue Committee Hearing, L.B. 727, 102d Leg., 2d Sess. (Jan. 18, 2012).

[83] 2A Norman J. Singer & Shambie Singer, Statutes and Statutory Construction § 47:33 at 494-97 (7th ed. 2014).

[84] *Id.* at 494.

[85] *Id.* at 499-500.

- 540 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
321 NEBRASKA REPORTS
MLB ADVANCED MEDIA v. NEBRASKA DEPT. OF REV.
Cite as 321 Neb. 515

the Legislature typically includes a comma before "return receipt requested."[86]

MLB's first three assignments of error relate to the service of the notice and the lack of a mailing with return receipt requested. Because we determine that the notice sent via first-class mail did not have to be mailed with a return receipt requested, these arguments fail.

### (b) Notice Not Void Ab Initio

MLB next argues that notice was void ab initio because it was based on a legal determination that the Department could not make. According to MLB, the February 2021 letter was not a final determination on the transfer request. But in our resolution of the transfer dispute, we have rejected this interpretation of § 77-5726(4). For the same reason, MLB's argument here fails.

### (c) Remand for Hearing on Timeliness Not Required

The district court determined that the deficiency dispute should be remanded to the Tax Commissioner for a hearing limited to whether MLB timely filed its protest. MLB challenges the limited nature of the hearing, contending that a full hearing should be held on its petition for redetermination. On cross-appeal, the Department contends that the court erred in remanding the matter for a hearing.

As noted above, the record reveals no real dispute concerning the timeliness of MLB's protest. "Due process requires an

---

[86] See Neb. Rev. Stat. §§ 2-10,103.04, 8-1,134, and 16-130 (Reissue 2022); 16-202 (Cum. Supp. 2024); 17-407, 17-503, and 18-2115.01 (Reissue 2022); 32-1409 (Supp. 2025); 37-1282, 42-364.10, and 43-3336 (Reissue 2016); 44-4062, 45-103.02, 45-738, 48-1120.01, 52-601.01, and 54-2311 (Reissue 2021); 60-149 (Cum. Supp. 2024); 60-164 (Supp. 2025); 60-2410 (Reissue 2021); 68-990, 76-856, and 76-2325 (Cum. Supp. 2024); 76-3217 (Reissue 2018); 79-2,118, 83-4,133, 85-9,170, 85-1636, 85-2418, 86-143, 86-644, and 89-187.08 (Reissue 2024); and Neb. U.C.C. § 9-513A (Reissue 2020).

- 541 -

Nebraska Supreme Court Advance Sheets
321 Nebraska Reports
MLB ADVANCED MEDIA v. NEBRASKA DEPT. OF REV.
Cite as 321 Neb. 515

evidentiary hearing only if there is a factual dispute."[87] Without a factual dispute about when the Department mailed the notice, an administrative hearing "would serve no purpose."[88] That reasoning applies to the district court's remand to the Department for a hearing. We therefore modify the district court's judgment to eliminate the remand.

## VI. CONCLUSION

For the reasons explained above, we conclude the following:

- The district court correctly determined that it lacked jurisdiction of the petition for review in the transfer dispute. Under § 77-5726(4), because the Tax Commissioner's February 2021 denial of MLB's transfer request was a "determination" or "proposed determination," MLB needed to file a protest within 60 days, but it failed to do so. Upon the expiration of that 60-day period, the determination became a "final determination."
- Applying principles of statutory interpretation, we conclude that § 77-27,135 did not require the sender of a notice of deficiency determination sent via first-class mail to request a return receipt.
- Because the record reveals no material dispute concerning the date of mailing of the notice of deficiency and the untimeliness of MLB's protest, the court erred in remanding for a hearing on timeliness.

Accordingly, we affirm the district court's order dismissing the transfer dispute for lack of jurisdiction. In the deficiency dispute appeal, we affirm the district court's judgment as modified to eliminate its remand for a hearing on the issue of timeliness.

JUDGMENT IN NO. S-25-144 AFFIRMED AS MODIFIED.
FINAL ORDER IN NO. S-25-145 AFFIRMED.

---

[87] 16D C.J.S. *Constitutional Law* § 1968 at 102 (2015).

[88] *Becton, Dickinson & Co. v. Nebraska Dept. of Rev., supra* note 62, 276 Neb. at 652, 756 N.W.2d at 290.